IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JEAN COULTER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 11-1201 |
| | ) | Judge Bissoon |
| THOMAS J. DOERR, | ) | Magistrate Judge Mitchell |
|     Defendant. | ) | |

REPORT AND RECOMMENDATION

I.    Recommendation

It is respectfully recommended that the motion to dismiss the Amended Complaint filed by Defendant Thomas J. Doerr (ECF No. 16) be granted.

II.    Report

Plaintiff, Jean Coulter, proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the Defendant, Thomas J. Doerr, the President Judge of the Court of Common Pleas of Butler County, Pennsylvania, acted outside his jurisdiction and violated her "fundamental rights [as] a parent" and her "Fifth Amendment Protections related to Due Process" when he was presiding over a Permanency Review Hearing concerning Plaintiff's child and he sentenced Plaintiff to a term of probation that included the condition that she have "no contact" with the child for the full length of the term of the newly imposed sentence (until January 2013).

Presently before this Court for disposition is a motion to dismiss the Amended Complaint, brought by the Defendant. For the reasons that follow, the motion should be granted.

Facts

The Amended Complaint alleges, that on September 23, 2009, Judge Doerr sentenced Plaintiff to a term of probation which included the condition that she have no contact with her

child for the full length of the newly imposed sentence, that is, until January 2013. She states that Judge Doerr is not a judge of the Criminal Division, that no criminal action was pending against her in the court, that no petition to limit her contact had been brought before him, that no petition for conditions of probation had been brought before him or any other judge in any jurisdiction and that his action were not performed as part of his judicial duties because he was not acting on matters which had been appropriately presented to the court by those to whom the authority for such action has been properly granted. (Am. Compl. at 2 ¶ 2.)[1]

Procedural History

Plaintiff filed an initial complaint on September 19, 2011. On December 2, 2011, Defendant filed a motion to dismiss (ECF No. 10). On December 27, 2011, Plaintiff filed an Amended Complaint (ECF No. 15). In response to arguments made in Defendant's motion to dismiss the original complaint, she explicitly alleges that she is only suing Judge Doerr in his individual or personal capacity. (Am. Compl. at 1 ¶ 2.) As noted above, she alleges that Judge Doerr's actions violated her fundamental rights as a parent and her Fifth Amendment due protections related to due process. She alleges that Judge Doerr's actions have "severely injured [her] relationship with the Child and significantly prejudiced [her] position in related matters before the Court of Common Pleas of Butler County, Pennsylvania" that she is "now embroiled in a costly and emotionally charged appeal resulting from the Child's clearly tainted testimony and the related improper actions of this Defendant," that "the Child required nearly $700.00 of unreimbursed *emergency* Mental Health Treatment to help the Child deal with the results of the testimony provoked by the lies she had been told," that she "was not able to send a gift or even a

---

[1] ECF No. 15.

2

card to the Child for the Child's birthday, further straining the relationship at a crucial time for both the Child and Plaintiff," and that she "was severely hindered in her ability to conduct Discovery in a meaningful manner as a result of the verbal No Contact Order which was issued by this Judge on September 23, 2009." (Am. Compl. at 4-5.) She "demands judgment against Defendant for damages and for all such other relief as this Court deems just." (Am. Compl. at 5.) On January 5, 2012, Defendant filed a motion to dismiss the Amended Complaint.

Standard of Review

The Supreme Court recently issued two decisions that pertain to the standard of review for a motion to dismiss for failure to state a claim upon which relief could be granted under Federal Rule of Civil Procedure 12(b)(6). The Court held that a complaint must include factual allegations that "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). "[W]ithout some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice' but also the 'grounds' on which the claim rests." Phillips v. County of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008). In determining whether a plaintiff has met this standard, a court must reject legal conclusions unsupported by factual allegations, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements;" "labels and conclusions;" and "'naked assertion[s]' devoid of 'further factual enhancement.'" Iqbal, 129 S.Ct. at 1949 (citations omitted). Mere "possibilities" of misconduct are insufficient. Id. at 1949-50. District courts are required to engage in a two part inquiry:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions…. Second, a District Court must then determine

3

> whether the facts alleged in the complaint are sufficient to show the plaintiff has a "plausible claim for relief." … In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) (citations omitted).

Defendant cites the rule that: "Although a district court may not consider matters extraneous to the pleadings, 'a document *integral to or explicitly relied* upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.'" U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)). Thus, he contends that his opinion issued on January 11, 2011 and the opinion of the Superior Court issued on November 21, 2011, which are referred to in the Amended Complaint (Am. Compl. ¶¶ 1-2 & p. 4) and attached to his brief in support of his motion to dismiss (ECF No. 17 Exs. A, B), may be considered without converting the motion into one for summary judgment.

Plaintiff responds that these documents are not referred to in the Amended Complaint, which concerns the dependency proceeding. Rather, they relate to the termination proceeding, which had not yet been scheduled on September 23, 2009.

The Court need not resolve this dispute, because the Court may also consider matters of public record, including Plaintiff's criminal case, the daughter's dependency case and Plaintiff's case concerning the termination of her parental rights.[2] See Pension Benefit Guaranty Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).

---

2     Some of the facts cited herein were presented to the Court in connection with Plaintiff's habeas corpus action, Civ. A. No. 10-965, which was dismissed on November 23, 2011 and is currently on appeal.

The Court takes note of the following facts from state court records: On May 11, 2007, Plaintiff entered a negotiated plea of nolo contedere to one count of aggravated assault committed against her minor daughter and on July 17, 2007, she was sentenced to a fifteen to thirty-month period of incarceration to be followed by thirty-six months of probation at No. 727 of 2006 in the Criminal Division of the Court of Common Pleas of Butler County, Pennsylvania. The child was adjudicated dependent as a result of Plaintiff's actions. Plaintiff served her maximum sentence and on January 25, 2010, she was released from prison and began serving her probationary term.

On January 22, 2010, three days prior to her release from prison, the Commonwealth filed a "Motion for Special Conditions of Probation," in which it stated that her State Parole and Probation Officer was requesting that special conditions be placed on her probation, including that she have no contact with her daughter, the victim in the case. On January 26, 2010, the day after her release, she met with Dennis Hoerner, a parole supervisor for the Butler County suboffice of the Pennsylvania Board of Probation and Parole, as well as Agent Thomas Forest from the same office, who was to supervise her while on probation. During this meeting, Mr. Hoerner informed Plaintiff of a written instruction he had prepared, which instructed her not to have contact with her daughter, and she signed this condition. The trial court held an evidentiary hearing on the Commonwealth's motion on February 1, 2010, and on February 2, 2010, the court granted the Commonwealth's motion. Plaintiff appealed and on February 25, 2011, the Superior Court affirmed the decision of the trial court.

As a result of all of these proceedings, another proceeding was initiated in Orphans' Court to terminate Plaintiff's parental rights at No. O.A. 57 of 2007. As noted above, on January

11, 2011, Judge Doerr filed a Memorandum Opinion which terminated Plaintiff's parental rights as to her minor daughter and ordered custody of the daughter to remain with the Butler County Children and Youth Services (which had the right to proceed with the adoption of the minor daughter). Plaintiff appealed and on November 21, 2011 the Superior Court affirmed Judge Doerr's decision. (ECF No. 17 Exs. A, B.)

Defendant argues that: 1) the courts of Pennsylvania's unified judiciary are not "persons" for purposes of § 1983; 2) Pennsylvania courts are immune from suit under both the Eleventh Amendment and the sovereign immunity provisions of 42 Pa. C.S. § 8521; and 3) Plaintiff's action against Judge Doerr is barred by the doctrine of absolute judicial immunity.

Plaintiff responds that: 1) she is suing Judge Doerr in his individual capacity, and thus he is a "person" for purposes of § 1983; 2) because she is suing him in his individual capacity, the bars of Eleventh Amendment immunity and sovereign immunity do not apply; and 3) judicial immunity does not apply because he acted in an "extra-judicial" corrupt manner.

Because Plaintiff asserts in her Amended Complaint that she is suing Judge Doerr solely in his individual capacity, the Court need not address Defendant's first two arguments. See Kentucky v. Graham, 473 U.S. 159, 165-68 (1985); Laskaris v. Thornburgh, 661 F.2d 23, 26 (3d Cir. 1981) (Eleventh Amendment immunity does not bar suit against state officials in their individual capacities). Nevertheless, the absolute bar of judicial immunity applies and Defendant's motion should be granted for this reason.

Absolute Judicial Immunity

Defendant argues that he is immune from any damages claims based on the doctrine of absolute judicial immunity. A judge is immune from liability for all actions taken within a

judicial capacity. Mireles v. Waco, 502 U.S. 9 (1991); Forrester v. White, 484 U.S. 219, 225 27 (1988); Stump v. Sparkman, 435 U.S. 349 (1978). Judicial immunity is an "immunity from suit, not just from ultimate assessment of damages." Mireles, 502 U.S. at 11. Further, a "judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" Stump, 435 U.S. at 356-57 (quoting Bradley v. Fisher, 13 Wall. 335, 351 (1872)).

The Pennsylvania constitution provides that there shall be one court of common pleas for each judicial district and that it shall "hav[e] unlimited original jurisdiction in all cases except as may otherwise be provided by law." Pa. Const. Art. V, § 5(b). Moreover, the Judicial Code states that "the courts of common pleas shall have unlimited original jurisdiction of all actions and proceedings…." 42 Pa. C.S. § 931(a). Thus, Judge Doerr had subject matter jurisdiction to impose a no-contact order even if he was "not a judge in the Criminal Division" as Plaintiff insists.

Plaintiff's reference to September 23, 2009 appears to concern the dependency action at No. CP-10-DP-51-2006. On September 29, 2009, Judge Doerr issued a Permanency Review Order in that case that refers to a hearing held on September 23, 2009, although the written order does not contain a no-contact provision. It is further noted that the order of court entered on February 2, 2010 (signed by Judge Shaffer, who presided at Plaintiff's criminal proceeding), which granted the Commonwealth's Motion for Special Conditions of Probation and precluded Plaintiff from having any contact with her child during the period of her probation, would have superseded any order that Judge Doerr may have entered on September 23, 2009. As noted

7

above, this order was affirmed by the Superior Court on February 25, 2011. Moreover, even Judge Olson, who dissented from the majority's holding because he did not believe that the statutory requirements for imposing a special condition of probation were fulfilled in the case, nevertheless concluded that Plaintiff was barred from having any contact with her daughter based upon the written instructions given to her by the Board of Probation and Parole on January 26, 2010.

Plaintiff's allegation that Judge Doerr "sentenced her to a term of probation" in the dependency proceeding on September 23, 2009 is nonsensical and is not supported by any of the public records to which the Court can properly refer. However, the Court need not resolve which of the three proceedings (the criminal matter, the dependency proceeding or the termination of parental rights proceeding) Plaintiff is challenging herein, because in any event the extensive jurisdiction of the Court of Common Pleas would include any order entered relevant to those cases entered by Judge Doerr.

Plaintiff argues that Judge Doerr was "corrupt" and that his actions were "extra-judicial." In support of this argument, she cites <u>Dawn v. Ciavarella</u>, 2010 WL 3122858 (M.D. Pa. Aug. 9, 2010), a case arising out of the tragic circumstances in Luzerne County in which two judges on the Court of Common Pleas (Ciavarella and Conahan) entered into an agreement with an attorney and a local construction company to build a juvenile detention center and then diverted large numbers of juveniles into this facility in exchange for "kickbacks." Referring to the very similar prior case of <u>Wallace v. Powell</u>, 2009 WL 4051974 (M.D. Pa. Nov. 20, 2009), the court stated that:

> In <u>Wallace</u>, this Court held that the allegations that Conahan and

> Ciavarella did not act as impartial judges, failed to advise juveniles of their right to counsel, and failed to determine whether guilty pleas were knowing and voluntary, while "egregious, unjustifiable judicial behavior," did not "make out a case for the absence of jurisdiction." Wallace, 2009 WL 4051974, at *7. Thus, as to their courtroom behavior, both Conahan and Ciavarella were held to have jurisdiction.
>
> In this case, Plaintiff alleges that Conahan ordered various juveniles to be placed in the new juvenile facilities as part of a scheme to ensure that the facilities were lucrative. As to this type of courtroom behavior, Conahan clearly had jurisdiction.
>
> However, many of the actions taken by Conahan were not of a judicial nature. To the extent that Plaintiff makes allegations regarding Conahan's disposition of other juvenile cases before him in his role as judge, those are judicial acts and Conahan has immunity. However, the vast majority of activity alleged against Conahan was taken outside his role as judicial officer. The agreements entered into by Conahan with Mericle and Powell, any budget decisions [made] by Conahan as President Judge, or any of advocacy for building a new detention center are non-judicial acts that are not subject to absolute judicial immunity. See Wallace, 2009 WL 4051974, at *8 (delineating judicial and non-judicial acts taken by Conahan). Therefore, Conahan's motion to dismiss is granted regarding any actions he took in delinquency determinations of other minors in furtherance of the conspiracy and other judicial acts. However, the remaining claims against Conahan fall outside of the realm of judicial acts and he cannot be shielded by judicial immunity for these actions. The motion will be denied as to these actions.

Id. at *4.

As the Ciavarella case illustrates, whether an act is a "judicial act" depends upon whether it is a function normally performed by a judge and whether the parties dealt with the judge in his judicial capacity. Stump, 435 U.S. at 361-62. The acts alleged here are all functions normally performed by state court trial judges and there is no suggestion that the parties dealt with Judge Doerr other than in his judicial capacity. See Capogrosso v. Supreme Court of State of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (plaintiff sued four New Jersey Superior Court judges, alleging that they engaged in judicial misconduct during proceedings she brought before them, but the case

9

was dismissed based on judicial immunity).

Plaintiff has not alleged that Judge Doerr entered into agreements to have juvenile detention centers built, made budget decisions or advocated for building a new juvenile detention center. Rather, she alleges that he entered an order regarding Plaintiff's access to her daughter. Entering an order in court relating to the matter at issue is a quintessential judicial act. A judicial act "does not become less judicial by virtue of an allegation of malice or corruption of motive." Forrester v. White, 484 U.S. 219, 227 (1988). Nor does it matter whether Judge Doerr decided to impose the no-contact provision on his own as opposed to upon motion from the Commonwealth.

Plaintiff's allegations involve judicial actions taken by Judge Doerr, who was acting within his judicial authority. Therefore, he is immune from Plaintiff's suit for damages.

Moreover, assuming that Plaintiff is seeking injunctive relief against Judge Doerr, she could not obtain it. Congress amended § 1983 in 1996 to provide that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity … unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Plaintiff has not alleged that a declaratory decree was violated or that declaratory relief is unavailable. Because any injunctive relief sought against Judge Doerr would address his actions in his judicial capacity, her claim would be barred. See Azubuko v. Royal, 443 F.3d 302, 303-04 (3d Cir. 2006).

For these reasons, it is recommended that the motion to dismiss the Amended Complaint filed by Defendant Thomas J. Doerr (ECF No. 16) be granted.

Litigants who seek to challenge this Report and Recommendation must seek review by

the district judge by filing objections within the time specified in the Notice of Electronic Filing. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will waive the right of appeal.

                                                    s/Robert C. Mitchell_____
                                                    ROBERT C. MITCHELL
                                                    United States Magistrate Judge

Dated: February 8, 2012

cc:    Jean Coulter
        4000 Presidential Boulevard
        Apartment #507
        Philadelphia, PA 19131